**NOT FOR PUBLICATION**                                              **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AMERICAN SENSO RX, INC., | |
| Plaintiff | Civil Action No. 06-1929 (FSH) |
| v. | **OPINION** |
| BANNER PHARMCAPS, INC. | |
| Defendant. | Date: September 6, 2006 |

**HOCHBERG, District Judge**

### I.    INTRODUCTION

This matter is before the Court on Defendant's Cross-Motion to Transfer the Case Pursuant to 28 U.S.C. §1404(a) to the Middle District of North Carolina. The Court has made its determination after considering the written submissions of the parties and without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons set forth below, the Defendant's Cross-Motion to Transfer the Case to the Middle District of North Carolina is granted.

### II.    FACTUAL BACKGROUND

Plaintiff American SensoRx, Inc. ("SensoRx") is a New Jersey corporation with its principal place of business in Glen Rock, New Jersey. Plaintiff designs, develops, and implements high speed inspection systems to analyze numerous objects simultaneously and to identify microscopic flaws or deviations in certain products. A component of SensoRx's

1

Dockets.Justia.com

inspection system is a rejection device to separate and segregate those product items which fail to meet the pre-determined product specifications. Defendant Banner Pharmcaps, Inc. ("Banner") is a Delaware Corporation with its principal place of business located in High Point, North Carolina, which is located in the Middle District of North Carolina. Banner manufactures healthcare products, including soft gelatin capsules. On March 24, 2005, Plaintiff SensoRx made a written offer to design and manufacture a complete inspection system ("Inspection System") which met Defendant Banner's needs entitled "Rental Agreement for American SensoRx InspectRx Vision System" ("Agreement"). The Agreement indicated that the initial rental period would be three months, and at the end of this period, Banner would either purchase the system for the agreed price, extend the rental to another plan for the agreed time and price, or return the system to SensoRx. In the Agreement, Plaintiff promised to "refund 100% of the money paid to them for the system" if the system did not meet the requirements set forth in the Agreement. *See* Agreement at p. 2. On March 31, Defendant Banner signed the Agreement in North Carolina.

On April 7, 2005, SensoRx requested Banner to pay a deposit of $45,000.00 toward the three-month rental price set forth in the Agreement. Banner paid this amount, and in late May 2005, SensoRx shipped the Inspection System to Banner in North Carolina. On June 11, 2005, Dr. Sabrie Solomon, president of SensoRx, traveled to North Carolina to install the Inspection System at Banner's facility. In its Answer, Defenses, and Counterclaim ("Counterclaim"), Defendant Banner alleged that although Solomon and his assistant attempted to install and bring the Inspection system on-line during June and July, it would not work properly. *See* Counterclaim at ¶17-19. By August 2005, Banner determined that the Inspection System would not operate as promised and requested the return of its $45,000 pursuant to SensoRx's "100% Money-Back

2

Guarantee." Banner offered to return the Inspection System back to SensoRx. Banner alleges that SensoRx refused to return the deposit or provide shipping information for Banner to return the Inspection System. *See* Counterclaim at ¶21-22. In December 2005, Plaintiff provided the necessary shipping information, and Banner returned the Inspection System around December 12, 2005. *See* Counterclaim at ¶23.

Plaintiff SensoRx filed a complaint in the Superior Court of New Jersey, Law Division, Bergen County on March 10, 2006 alleging claims of Breach of Contract, Unjust Enrichment, Quantum Meruit, Unpaid Expenses ("Account Stated/Book Account"), and Damage to Property. Defendant Banner removed the matter to this court on April 26, 2006. On May 3, 2006, Banner filed its Answer, Defenses, and Counterclaim. Banner's Counterclaims include Breach of Contract, Conversion, Fraud, Unfair and Deceptive Acts and Practices, and Breach of Implied Covenant of Good Faith and Fair Dealing. On May 23, 2006, SensoRx filed its Motion to Dismiss Counts 2-5 of Banner's Counterclaim.[1] On June 26, 2006 Banner brought this Cross-Motion to Transfer this matter from the U.S. District Court for the District of New Jersey to the U.S. District Court for the Middle District of North Carolina pursuant to 28 U.S.C. §1404(a). Plaintiff filed a Memorandum of Law In Opposition to Defendant's Cross-Motion to Transfer ("Plaintiff's Reply") on July 17, 2006, and Defendant filed a Memorandum of Law in Reply to Opposition to Banner's Cross-Motion to Transfer on July 24, 2006.

---

[1] This Court takes no position on any of the issues raised in the Plaintiff's Motion to Dismiss Counts 2-5 of Banner's Counterclaims. Throughout this Opinion, the Court discusses the Defendant's counterclaims in the context of this Cross-Motion to transfer. However, this Court's discussion of these counterclaims does not represent any opinion on whether they belong in the case.

III.    ANALYSIS

A.    Standard of Review under 28 U.S.C. §1404(a)

28 U.S.C. §1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The goal of §1404(a) is to prevent the "waste of 'time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The moving party bears the burden of establishing that a court should grant a transfer and must give the court "adequate data of record" in support of its position. *See Tischio v. Bontex, Inc.*, 16 F.Supp.2d 511, 520 (D.N.J. 1998).

The movant must first show that the transferee court is one where the matter could have originally been brought. *See, e.g., Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970), *Sandvik, Inc. v. Continental Ins. Co.*, 724 F.Supp. 303, 306 n.7 (D.N.J. 1989), and *CIBC World Markets, Inc. v. Deutsch Bank Securities, Inc.*, 309 F.Supp. 2d 637, 644 (D.N.J. 2004). Although §1404(a) only specifically mentions the convenience of the parties, the convenience of the witnesses, and the interests of justices, the transfer analysis is not limited to these three factors. The court must more broadly consider the private interests of the litigants and the public interest in fair and efficient administration of justice when making its decision. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947).[2] The Third Circuit has developed representative issues to

---

[2]The Court noted that the private interest factors are: (1) plaintiff's choice of forum, (2) the relative ease of access to sources of proof, (3) the availability and cost of compulsory process for unwilling witnesses, (4) obstacles to a fair trial, (5) the possibility of viewing any necessary premises, and (6) all other factors relating to the expeditious and efficient adjudication of the

4

consider when analyzing the private interest and the public interest. *See Jumara v. State Farm Insurance Company*, 55 F.3d 873, 879 (3d Cir. 1995). The private interests include plaintiff's preferred forum, defendant's preferred forum, whether the claims arose in a forum other than the forum selected by the plaintiff, the physical and financial condition of the parties, and the relative ease of access to the sources of proof, including witnesses, books, and records. *Id*. The public interests recognized by the Third Circuit include the judge's familiarity with the applicable state law, the local interest in adjudicating disputes at home, court congestion in the two fora, the public policies of the forum, the burden of jury duty on the citizens of the state with a greater interest in the dispute, and the opportunity for the fact finder to view the location of the dispute. *Id*. The analysis, however, should not be limited to these factors, and factors may have different relevance in particular cases. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-529 (1988). A court's decision to transfer should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879.

**B.      This Matter Could Have Been Brought in the Middle District of North Carolina**

The initial analysis under a §1404(a) motion requires the court to determine whether the

---

dispute. *Id*. The public interest factors are: (1) the relative backlog and other administrative difficulties in the two jurisdictions, (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute, (3) the local interest in adjudicating localized disputes; and (4) the appropriateness of having the jurisdiction whose law will govern adjudicate the dispute in order to avoid difficult problems in conflicts of laws. *Id*. Although *Gulf Oil* articulated these factors in the context of a motion to dismiss for *forum non conveniens,* courts routinely look to the *Gulf Oil* factors in deciding a motion to transfer venue under § 1404. *See, e.g., National Property Investors VIII v. Shell Oil Company*, 917 F. Supp. 324, 326 (D.N.J. 1995)

subject matter jurisdiction, personal jurisdiction, and venue in the transferee court are valid. *See CIBC*, 309 F.Supp. 2d at 644 (D.N.J. 2004). First, subject matter jurisdiction is valid under 28 U.S.C. §1332: Plaintiff is a New Jersey corporation with its principal place of business in New Jersey, Banner is a Delaware corporation with its principal place of business in North Carolina, and both the complaint and the counterclaim allege an amount in controversy exceeding the $75,000 requirement. Second, personal jurisdiction is also valid for both Plaintiff and Defendant. Because Banner's principal place of business is in the Middle District of North Carolina, the court would have personal jurisdiction over Banner. As well, the court would have personal jurisdiction over SensoRx because it entered into a contract that was executed in North Carolina, sent numerous communications to North Carolina, had officers and employees travel to North Carolina, attempted to implement and perform the Agreement in North Carolina, and signed documents in North Carolina acknowledging that the product would perform in a certain way. Last, venue is appropriate in the Middle District of North Carolina because Defendant's principal place of business in High Point, North Carolina is located in the district. In its opposition to Defendant's Motion to Transfer, Plaintiff concedes that venue would be proper in the Middle District of North Carolina and that the court would have subject matter and personal jurisdiction over the parties in this matter. *See* Plaintiff's Reply at 16.

**C.     The Private Interests of the Litigants Favor Transfer of this Matter to North Carolina**

1.     Choice of Forum

The Third Circuit has recognized that a plaintiff's choice of forum is a "paramount

6

concern" in deciding a §1404(a) transfer request. *Shutte, 431 F.2d* at *25*. *See also, e.g., Tischio*, 16 F.Supp.2d at 521 and *Park Inn Int'l. v. Moody Enter.*, 105 F.Supp. 2d 370, 377 (D.N.J. 2000). Further, when the plaintiff has chosen its home state as the forum, that decision is "entitled to greater deference." *Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981). However, where the central facts of the lawsuit occur outside of the forum state, the plaintiff's selection is entitled to less deference. *See, e.g., National Property Investors III*, 917 F. Supp. at 327 (holding that "the Court does not accord great weight to Plaintiff's choice of New Jersey as the forum in which to bring this action, because New Jersey has a tangential relationship to the facts underlying Plaintiff's claims") *citing S.C. Johnson & Son v. Gillette Co.*, 571 F.Supp. 1185, 1188 (N.D. Ill. 1983) (stating that "as a general rule, the preferred forum is that which is the center of gravity of the accused activity") and *Ricoh Co.*, 817 F.Supp. at 481. Because the central facts of this lawsuit occur outside of New Jersey—and indeed in the district where the Defendant moves to transfer this case—Plaintiff's selection is entitled to less deference.

Almost all, if not all, of the central facts of this lawsuit occur in North Carolina, outside of the forum state of New Jersey. In determining where the central facts of a lawsuit occurred, courts look at where the cause of action arose. *See NPR, Inc. v. American International Insurance Company of Puerto Rico*, 2001 WL 294077 (D.N.J. March 28, 2001). In a breach of contract action for the failure of goods to perform correctly, a cause of action arises where the contract was supposed to be performed. *See Thorlabs, Inc. v. Townsend Comm., LLC*, 2004 WL 1630488, *4 (D.N.J. June 30, 2004). The Agreement in this case involves the Plaintiff's manufacturing of a piece of equipment that was supposed to be delivered, installed, FDA-validated, and operate in

7

North Carolina.[3]  As well, the Plaintiff was supposed to train Banner personnel in North Carolina; if the inspection system needed any maintenance, the Plaintiff would send someone to North Carolina to perform the repair; and Defendant's refusal to make any additional payments, which the Plaintiff claims breached the Agreement, occurred at the Defendant's office in North Carolina. As well, Defendant bases its tort claims on Plaintiff's "100% Money-Back Guarantee," which Plaintiff sent to North Carolina.  *See CIBC*, 309 F. Supp. 2d at 648.  Therefore, the Plaintiff's choice of forum will be given less deference because the central facts of this lawsuit occur outside of New Jersey.

2.      Physical and Financial Condition of the Parties

Both parties—self described as leaders in their fields—appear to have sufficient resources to litigate this case outside their choice forum.  Although Plaintiff describes itself as a "local company" and as the David in a self-proclaimed "David. v. Goliath" match in its 5/24/06 Motion to Dismiss Counts 2-5 of Defendant's Counterclaim, this does not appear to be the case.  For example, on its website, Plaintiff describes itself as a "world leader" in developing automated systems and represents that it has sold systems around the world, including in Korea and Japan. As well, because Plaintiff describes itself as a company that tailors each machine to the individual needs of the client, presumably its employees travel frequently.  In its Opposition to Defendant's Cross-Motion to Transfer, Plaintiff argues that its "limited resources" will be "stretched to the limit in order to support the added expenses inherent in out-of-state litigation."  *See* Soloman

---

[3]Plaintiff does not dispute that the Agreement was required to be performed in North Carolina nor that the Agreement called for the Plaintiff to deliver and install the Inspection System in North Carolina.

Affidavit at ¶6. Plaintiff, however, has not produced any documentation to support this claim. Although Plaintiff may be marginally less able to fund litigation in North Carolina than Defendant is to in New Jersey, the evidence does not support that Plaintiff's financial circumstances are so dire as to prevent transfer. *NPR, Inc.*, 2001 WL 294077 at *5. Therefore, this is a neutral element in the private interest analysis.

3.      Relative East of Access to the Sources of Proof, Including Witnesses, Books, and Records

Based on upon the parties' submissions, the location of non-party witnesses supports a transfer of this case to North Carolina. Banner asserts that numerous witnesses would be required to testify in this litigation and that they would not be willing to travel voluntarily to New Jersey. Defendant provided four affidavits from employees involved in the installation of the Inspection System who would not be willing to travel to New Jersey voluntarily and who do not normally travel for their jobs: Robert D. Greiner, a process engineer at Banner who was involved in the installation of the Inspection System, the preparation of the FDA-required validation study which accompanied the Inspection System, and numerous communications with Dr. Solomon, Plaintiff's president, before Banner entered into the Agreement; Lisa Zoppo, Senior Manager for Quality Assurances at Banner who was involved with the validation study of the Inspection System; Jay Krueger, manager of the Post-Production Department at Banner in 2005, which is the department where the system was installed; and Katrina Roberts, a Validation Engineer for Banner who was involved in numerous communications with SensoRx personnel before and during the time when they came to North Carolina to install the inspection system as well as the validation study. *See* Attachments 2-5 of Defendant's Cross-Motion to Transfer. As well, Jay Krueger swore in his affidavit that there were at least four associates in his department who were trained on the

9

Inspection System. All of these witnesses are necessary to testify on the performance of the Inspection System.

On the other hand, Plaintiff's primary witness, Dr. Soloman, is already a frequent traveler for business who flew down to North Carolina on numerous occasions regarding the Inspection System. In its Reply, Plaintiff argues that it will rely upon the testimony of "two key non-party witness" employed at Ackley Machine Corporation ("Ackley"), a company that supplied Banner with the Inspection System, in order to counter Banner's contention that the Inspection System never worked properly. However, Plaintiff did not submit any affidavits from either individual, and therefore there is no reliable evidence as to what they may testify about.[4] Moreover, there is no evidence that either individual participated in the negotiation of the Agreement or even saw the Inspection System prepared by the Plaintiff. Further, there is no evidence that either witness refuses to travel to North Carolina. Therefore, the location of non-party witnesses supports a transfer of this case to North Carolina.

**D.    The Public Interests of the Litigants Favor Transfer of this Matter to North Carolina**

1.    Forum's Familiarity with the Applicable Law

A federal court with diversity jurisdiction must apply the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Because

---

[4]Dr. Soloman's affidavit says that "I am informed by counsel that at trial, SensoRx, will rely upon the testimony of two individuals who are not employees." *See* Soloman Affidavit at ¶7. This Court, however, cannot simply rely on this statement alone. *See Fowler v. Borough of Westville*, 97 F.Supp. 2d 602, 607 (D.N.J. 2000) (holding that the Court would not consider statements in an affidavit that are not based on the declarant's personal knowledge or that contained inadmissible hearsay).

10

North Carolina law applies to both parties' breach of contract claims as well as to the Defendant's fraud tort claim, this factor favors a transfer to the Middle District of North Carolina.

Under New Jersey law, the governing law in a contract case is that of the jurisdiction with the most significant relationship and closest contacts with the transaction and the parties. *See, e.g., Keil v. National Westminster Bank*, 710 A.2d 563, 569 (App. Div. 1998) and *Gilbert Spruance v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102-103 (1993). To determine which states have more significant contacts, New Jersey courts look to issues such as (a) the place of contract; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See National Utility Service v. Chesapeake Corp.,* 45 F. Supp. 2d 438, 447 (D.N.J. 1999). However, there is a presumption that the law of the place of contract and the place of performance should apply, absent some dominant and significant relationship with another state, because "the law of the place of contract generally comport[s] with the reasonable expectations of the parties' concerning the applicable and controlling legal principles." *Id.*, *citing Keil*, 710 A.2d at 569. Applying these factors, North Carolina law should govern the contract. Banner initially solicited SensoRx with a telephone call and electronic mailings from North Carolina, and the contract was created in North Carolina. As well, the Agreement was performed in North Carolina because Plaintiff installed the Inspection System in banner's North Carolina facilities. Because "[j]ustice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law," this

11

factor supports transferring the case to North Carolina.[5] *See NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F.Supp.2d 317, 323 (D.N.J. 1998).

For tort claims, New Jersey has rejected the traditional rule of lex loci delicti and instead applies a flexible governmental interest analysis requiring application of the law of the state with the greatest interest in resolving the particular issue. *See, e.g., Gantes v. Kason Corp.*, 145 N.J. 478, 484 (1996) and *Marks v. Struble*, 347 F.Supp.2d 136, 142 (D.N.J. 2004). The court must perform its analysis on an issue-by-issue basis, which may result in the court applying different states' laws to different issues in the same litigation. *See Robeson Industries Corp. v. Hartford Accident & Indemnity Co.*, 178 F.3d 160, 168 (3d Cir. 1999). The first step in the governmental interest analysis requires the court to determine whether an actual conflict exists between the laws of the interested states. *Marks*, 347 F.Supp.2d at 142. If there is no conflict, the court must apply the law of the forum state. *Prima v. Darden Restaurants, Inc*. 78 F.Supp.2d 337, 345 (D.N.J. 2000). In this case, Defendant has alleged tort claims of conversion, fraud, and unfair and deceptive practices. A conflict exists between North Carolina law and New Jersey law on the burden of proof required to maintain a claim for fraud because North Carolina requires a preponderance of the evidence and New Jersey requires clear and convincing evidence. *Compare Manufacturer's Oil & Grease Co. v. Averett*, 192 N.C. 465 (1926) ("On the issue of fraud, the burden is on the [the party asserting the claim] to satisfy the jury of fraud by the greater weight of

---

[5]In its Reply to Plaintiff's Opposition to its Cross-Motion to Transfer, Defendant also highlights that there is a conflict in law in the application of the parol evidence rule under North Carolina and New Jersey law. However, because under New Jersey law the governing law in a contract case is that of the jurisdiction with the most significant relationship and closest contacts with the transaction and the parties, this Court will not discuss this issue.

the evidence or a preponderance of the evidence."), *Maurer v. SlickEdit, Inc.,* 2006 WL 269954 at *9 (N.C. Super. February 3, 2006) ("Fraud must be proven by preponderance of evidence"), and *Oliver v. Hecht*, 207 N.C. 481, 486, (1934) *with Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 214 F.Supp. 2d 453, 458 (D.N.J. 2002) (noting that New Jersey law requires fraud to be proven by a clear and convincing standard of proof). Defendant also argues that because Banner's unfair and deceptive trade practices claim is based in large part on its claim for fraud, the application of North Carolina law to Banner's fraud claim would necessitate the application of North Carolina law to Banner's unfair and deceptive trade practices claim, *citing Hardy v. Toler*, 288 N.C. 303, 311 (1975). *See* Defendant's Cross-Motion to Transfer at 21. Plaintiff does not specifically address this argument in its Reply. Even without considering the unfair and deceptive trade practices claim, this Court finds that because both parties' breach of contract claim as well as the fraud tort claim are under North Carolina law, the forum's familiarity with the applicable law cuts in favor of transferring this case to the Middle District of North Carolina.

2.     Relative Court Congestion

Although relative court congestion is not the most important factor in a §1401(a) analysis, *see Park Inn Int'l*, 105 F.Supp.2d at 378, the Middle District of North Carolina has fewer cases than the District of New Jersey. According to the official U.S. Courts website, for the 12-month period ending March 31, 2005, New Jersey had 5,442 cases with the median time interval to reach trial being 27 months and the Middle District of North Carolina had 734 cases with the median time interval of 20 months to reach trial. *See* Defendant's Cross-Motion to Transfer, Exhibit 2. Therefore, although not given much weight, this issue favors transfer as well.

13

3. Local Interest and Nexus to the Controversy

North Carolina's local interest and nexus to the controversy also favor transferring the case to the Middle District of North Carolina. The District of New Jersey has recognized that "North Carolina has a significant interest in adjudicating disputes arising from events occurring within its borders." *National Property Investors VIII*, 917 F.Supp. at 330 (D.N.J. 1995). North Carolina has strong interest in adjudicating claims having to do with an alleged breach of contract where the contract was created in North Carolina. As well, as explained in detail above, the contract was to be fulfilled in North Carolina, where the Inspection System was installed. New Jersey should not be burdened with adjudicating a dispute which arose out of a contract entered into in North Carolina and which inflicted damage on a North Carolina corporation. *See Gulf Oil*, 330 U.S. at 508-9.

## IV. CONCLUSION

For the reasons stated herein, the Cross-Motion to Transfer this matter from the U.S. District Court for the District of New Jersey to the U.S. District Court for the Middle District of North Carolina pursuant to 28 U.S.C. §1404(a) is **GRANTED**. An appropriate order will issue.

    /s/ Faith S. Hochberg
**HON. FAITH S. HOCHBERG, U.S.D.J.**